# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

MICROSOFT CORPORATION,

        Plaintiff,

v.                                             Case No. 06-CV-1247

RAM DISTRIBUTION, LLC,
d/b/a ATOMICPARK.COM,
d/b/a BIGCLEARANCE.COM,
and ANTHONY BOLDIN,

        Defendants.

_____

## ORDER

Plaintiff Microsoft Corporation ("Microsoft") filed suit against defendants Ram Distribution, LLC and Anthony Boldin ("defendants") asserting that defendants infringed Microsoft's copyrights and trademarks, violated the Lanham Act by falsely designating the origin of software and/or related components, and engaged in unfair competition. Microsoft now brings this motion for summary judgment as to defendants' liability on all of its claims. Microsoft also seeks an award of statutory damages under both the Copyright Act and the Lanham Act, costs and attorneys fees, as well as a permanent injunction against defendants on future infringement of Microsoft's copyrights and trademarks. For the reasons set forth below, the court will grant, in part, and deny, in part, Microsoft's motion for summary judgment. The court will deny the motion for summary judgment on the issues of infringement, false designation of origin, and unfair competition. The court will also deny Microsoft's

motion for attorneys' fees and costs and a permanent injunction. However, the court will grant the motion for summary judgment on the issue of Boldin's personal liability.

## BACKGROUND

Microsoft is a Washington corporation that develops, markets, distributes, and licenses computer software and related components throughout the world. Microsoft developed and holds valid copyrights on the following computer software programs: Microsoft Windows 2000 Professional, Microsoft Office 2000 Pro, Microsoft Access 2000, Microsoft Excel 2000, Microsoft Outlook 2000, Microsoft PowerPoint 2000, Microsoft Word 2000, Microsoft Publisher 2000, and Microsoft SQL Server 2000. (PFOF ¶¶ 1-3). These copyrights are duly and properly registered with the United States Copyright Office. (PFOF ¶ 3). Microsoft also holds a number of duly and properly registered trademarks and service marks with the United States Patent and Trademark Office. (PFOF ¶ 7).

Ram Distribution, LLC ("Ram Distribution") is a Wisconsin limited liability corporation that offered computer hardware and software for sale on a number of websites. (PFOF ¶ 9). Ram Distribution's President, Secretary, and sole owner was Defendant Anthony Boldin ("Boldin"). (Response to PFOF ¶ 10). Boldin was also the sole person entitled to the company's profits and he performed duties similar to that of a Chief Executive Officer. (PFOF ¶ 11). Boldin owned or was involved with a series of successor companies that conducted online software sales. Ram Distribution is the most recent of these successor companies. Boldin founded his

original company, The Small Business Alliance, in 1998. He subsequently formed or managed Search4U, LLC, and Ram Software, LLC. (PFOF ¶¶ 13-16). In 2001, Boldin purchased the assets of Ram Software, LLC and formed the defendant in this action, Ram Distribution. At its peak in 2005, Ram Distribution produced $40 million in sales and its profits exceeded $1 million. (PFOF ¶¶ 19-21).

Ram Distribution acquired a portion of its software supply from Microsoft Authorized Resellers, vendors specifically authorized to distribute software from Microsoft. However, Ram Distribution also purchased software from sellers in the "gray" or "secondary" market, a market which typically offered lower prices than those of Microsoft Authorized Resellers. (PFOF ¶¶ 22-24). Microsoft products purchased in the "gray" market pose a greater risk of being counterfeit because they are not provided by authorized Microsoft vendors.

Ram Distribution did not inspect every copy of software it obtained on the gray market, nor did it have a routine inspection or auditing program to detect counterfeit software. (PFOF ¶¶ 26-27). Employees in the shipping department conducted any inspection of products that occurred, however, these workers had no special counterfeit-detection training. (PFOF ¶ 28). To conduct inspections, the employees would open the product, look inside the packaging, disk, printing and labeling, and compare the inspected product to other known samples received from an authorized dealer. (Response to PFOF ¶ 28).

The instant action is not the first suit Microsoft has filed against a business owned by Boldin. In 2000, Microsoft filed suit against The Small Business Alliance, Boldin's first company, alleging causes of action for copyright infringement, trademark infringement, false designation of origin, deceptive trade practices, and unfair competition. As a result of that suit, the United States District Court for the Eastern District of Wisconsin entered a consent permanent injunction against Boldin that prohibited future infringing distributions of software and other items protected by Microsoft's registered trademarks, service mark, and copyrights. (PFOF ¶¶ 31-34).

In addition to the permanent injunction, Microsoft provided subsequent warnings to Boldin about potentially counterfeit products obtained on the gray market. In 2002, Microsoft sent a letter to Boldin stating that his company may be distributing infringing software. (Response to PFOF ¶ 36). The letter also advised Boldin that the only assured way to avoid further infringement was to obtain Microsoft software through legitimate, authorized Microsoft channels. Further, a Microsoft investigator visited Boldin personally, warned him about purchasing software from non-Microsoft approved sources, and stated that current counterfeits were so sophisticated that distinguishing between counterfeit and genuine software would be difficult. (PFOF ¶¶ 37, 39, 41). However, Boldin continued to purchase products through the gray market. (PFOF ¶ 44). Boldin received an additional warning in 2003 when a Microsoft investigator sent him an email warning about the

risks of continued dealings in unauthorized sources of software. The investigator initiated the communication after being notified by an employee of the United States Marshal Service that he or she purchased a counterfeit version of Microsoft Office 2000 from Ram Distribution. (PFOF ¶¶ 45-46). When Boldin persisted in purchasing from the gray market, Microsoft initiated the current action.

## STANDARD

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment cannot simply rest on allegations or denials in its pleadings, but rather, it must also introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial. *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 675 (7th Cir. 2006). Finally, in conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

## ANALYSIS

Microsoft moves for summary judgment asserting that no genuine issues of material fact exist regarding the following: a) that defendants infringed Microsoft's

copyrights by distributing counterfeit copies of Microsoft software; b) defendants infringed Microsoft's federally registered trademarks in violation of the Lanham Act; c) defendants' actions were willful and committed with reckless disregard; d) Boldin is personally liable for copyright and trademark infringement; and e) defendants willful infringement justifies an enhanced statutory damages award. In response, defendants argue that Microsoft fails to establish its claims because Microsoft relies upon conclusory statements in place of evidence that the products in question were actually obtained from defendants and constitute "counterfeit" software. Defendants further argue that Boldin cannot be held individually liable because his actions did not rise to the requisite level of wrongdoing.

**I.      Nature of the Allegedly Counterfeit Software**

The parties dispute whether Microsoft established the origin and "counterfeit" nature of the allegedly infringing products it purchased, analyzed, and determined to be counterfeit. Microsoft supports its claims of infringement and false designation of origin by citing the affidavit of Evelyn Blackwell ("Blackwell"). The affidavit asserts that Blackwell is a Microsoft employee with experience and training in identification and analysis of infringing and counterfeit Microsoft software. It further asserts that a Microsoft investigator made purchases of purported Microsoft software from the defendants, which was subsequently analyzed and determined to be counterfeit. (Blackwell Aff. ¶¶ 1, 10-19). However, defendants argue that the affidavit is insufficient to establish infringement or false designation. Specifically, defendants

-6-

assert that the Blackwell affidavit should be stricken as vague and conclusory, or alternatively, should be stricken for failing the *Daubert* standard for admissibility of expert testimony.

The court agrees that portions of Blackwell's affidavit regarding the purchase, analysis and determination of counterfeit software should be stricken. As a result, the court cannot rely on these paragraphs of the affidavit in evaluating Microsoft's motion for summary judgment. Thus, Microsoft fails to establish that no genuine issue of material fact exists and the court will deny its motion for summary judgment on the issues of copyright infringement, trademark infringement, false designation of origin, and unfair competition.

Federal Rule of Civil Procedure 56(e) requires that an affidavit in support of a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." The requisite "personal knowledge" may include reasonable inferences, but those inferences must be "grounded in observation or other first-hand personal experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). In considering a motion for summary judgment, a court must not consider parts of an affidavit that are not based on personal knowledge. *Cooper-Schut v. Visteon Automotive Systems,* 361 F.3d 421, 429 (7th Cir. 2004). Indeed, a court may strike portions of an affidavit that do not meet the personal knowledge requirements of Rule 56(e). *See Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998) (quoting *Hadley v.*

*County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983), cert. denied, 465 U.S. 1006, 79 L. Ed. 2d 232, 104 S. Ct. 1000 (1984)) ("The district court was correct to strike these portions of the affidavits.")

Microsoft urges this court to grant summary judgment on its claims that defendants infringed Microsoft's copyrights and trademarks by selling counterfeit Microsoft products. To establish that no genuine issue of material fact exists, Microsoft asserts that Microsoft employees purchased software from defendants on seven separate occasions and determined that the software was counterfeit. Microsoft argues that, as a result, defendants committed indisputable infringement. In support of its motion, Microsoft relies on nine passages of the Blackwell Affidavit, each reading as follows:

> On or about [specified date], Defendants distributed to an investigator [a Microsoft product] software and/or related components, which was subsequently analyzed and determined to be counterfeit.

(Blackwell Aff. ¶¶ 10-18). Microsoft relies on these paragraphs, as well as defendants' failure to assert that the purchased products were not counterfeit, to support its motion for summary judgment.

However, paragraphs 10 through 18 of Blackwell's affidavit fail to satisfy the "personal knowledge" requirement of Rule 56(e). These vague statements provide no specific facts upon which Blackwell's "personal knowledge" can be established. Blackwell does not claim that she purchased the allegedly infringing products, nor does she even name the individual who completed these purchases. Indeed,

-8-

Blackwell can assert only that "an investigator" acquired the allegedly counterfeit "software and/or related components" from defendants. Similarly, Blackwell does not claim that she analyzed the products, nor does she provide any concrete facts regarding who analyzed them, what method was used, or which aspect of the product was deemed to be counterfeit. Blackwell does not assert that she personally observed any of the activities to which she testifies. Even if her statements represent inferences, Blackwell's assertions fail to show that they are "grounded in observation or other first-hand personal experience." *Payne*, 337 F.3d at 772.

At the beginning of her affidavit, Blackwell generally avers that "I have gained and have personal knowledge of the facts set forth below." (Blackwell Aff. ¶ 2). However, this statement does not cure the deficiency of personal knowledge in later portions of her affidavit. Blackwell testifies regarding specific purchases of products, on specific dates, which were subjected to a particular (albeit undisclosed) analysis. These are all discrete events. Therefore, someone observed or personally experienced the purchase, analysis, and subsequent pronouncement that the product in question was counterfeit. However, based on the affidavit, Blackwell is not this person. Blackwell's affidavit fails to establish that *she* observed or personally experienced any of the events *she* attests to in paragraphs 10 through 18. Blackwell's claims that counterfeit product was purchased from the defendants lack any detail or indicia of personal observation or experience.

-9-

Case 2:06-cv-01247-JPS   Filed 12/16/08   Page 9 of 18   Document 53

In addition to lacking personal knowledge, the paragraphs in question are vague and conclusory. Blackwell makes claims that "on or about" a particular date, software "and/or" components was purchased by "an investigator" and then "analyzed" and determined to be "counterfeit." (Blackwell Aff. ¶¶ 10-18). Blackwell's declarations lack any specificity about the method used to analyze the software or the basis on which it was deemed to be counterfeit. Instead, they simply conclude that the products were sold by defendants and were "counterfeit."

Blackwell's statements are insufficient to meet Rule 56(e)'s requirements for affidavits in support of summary judgment both because they are not based on personal knowledge and because they are conclusory. *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) ("statements outside of the affiant's personal knowledge or statements that are...merely conclusory do not meet this requirement"); *see also Microsoft Corp. v. V3 Solutions, Inc.*, No. 01 C 4693, 2003 U.S. Dist. LEXIS 15008, at *30 (N.D. Ill. Aug. 27, 2003) (Microsoft's (and [affiant]'s) conclusion that certain units of [the seized software] were counterfeit is wholly conclusory and insufficient to support summary judgment."). Therefore, the court will strike the aforementioned portions of the affidavit.

As a result, Microsoft's motion for summary judgment on its claims for copyright and trademark infringement, false designation of origin, and unfair competition fails. The court cannot rely on the stricken portions of Blackwell's affidavit when considering Microsoft's motion for summary judgment. *Cooper-Schut,*

361 F.3d at 429.  Thus, Microsoft does not irrefutably establish that defendants distributed counterfeit software.  Further, the court must draw all reasonable inferences in favor of defendants as the nonmoving party. *Tanner*, 433 F.3d at 915. Therefore, a genuine issue of material fact remains as to whether defendants distributed counterfeit software and committed infringement, false designation of origin, and unfair competition.  The court finds that Microsoft is not entitled to judgment as a matter of law under Rule 56(c) and will deny Microsoft's motion on this issue.

## II.     Boldin's Personal Liability

Microsoft urges this court to grant summary judgment as to Boldin's personal liability for defendants' acts of copyright and trademark infringement.  Microsoft asserts that Boldin has both vicarious and contributory liability because he materially contributed to the infringing activity of distributing counterfeit Microsoft product, that he had the ability to supervise the infringing activity, and that he had a direct financial interest in the activity.  Specifically, Microsoft points to Boldin's "express knowledge" that infringement was certain to result from continued purchasing in the gray market and his failure to heed either the injunction or Microsoft's warnings about infringement.  Microsoft further alleges that defendants' actions constitute "willful" infringement under the Copyright and Lanham Acts, which entitles Microsoft to enhanced statutory damages. In response, the defendants assert that Boldin did not participate in the day-to-day ordering, shipping and receiving of the goods at issue.

-11-

Case 2:06-cv-01247-JPS   Filed 12/16/08   Page 11 of 18   Document 53

Defendants further argue that Boldin's actions did not rise to the level of "willfully blind," but rather, were at most negligent.

The court finds that Boldin incurred vicarious and contributory liability for copyright and trademark infringement as a matter of law. The court further finds that defendants' actions constitute "willful" infringement under the Copyright Act and the Lanham Act as a matter of law. Based on these determinations, the court will grant summary judgment to Microsoft on the issues of Boldin's personal liability and "willful" infringement.

### a. Liability for Copyright Infringement

An individual may incur liability for a corporation's copyright infringement under two theories: 1) vicarious liability; and 2) contributory liability. *Burdick v. Koerner*, 988 F. Supp. 1206, 1209 (E.D. Wis. 1998). An individual is vicariously liable for infringing activity if he has the right and ability to supervise that activity and has an obvious and direct financial interest in the infringing activity. *Id*. A party may be contributorily liable if he directly participates in the infringing activity or "induces, causes, or materially contributes to the infringing conduct of another." *Id*. (citing *Grupke v. Linda Lori Sportswear, Inc.*, 921 F. Supp. 987, 998 (E.D.N.Y. 1996)).

If an individual is liable for such infringement, the court may make a further damages-related determination that the infringement was "willful." A defendant commits willful infringement under the Copyright Act if the defendant had "knowledge that its actions constituted an infringement," which may be constructive knowledge

inferred from the defendant's conduct. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995). A plaintiff can prove willfulness by offering circumstantial evidence giving rise to an inference of willful conduct by the defendant, even if there is no evidence establishing his actual knowledge. *Island Software & Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 264 (2nd Cir. 2005). A finding of "willfulness" matters to an ultimate award of damages. After infringement under the Copyright Act has been proven, a plaintiff may request statutory damages under 17 U.S.C. § 504(c) in lieu of actual damages and profits. *Id.* at 262. If the court finds that a defendant's infringement was "willful," a district court may enhance the statutory damages award up to $150,000 per infringed work. *Id.* at 263 (citing 17 U.S.C. § 504(c)(2)).

After application of these standards, the court concludes that if a factfinder determines that defendants committed copyright infringement, then Boldin is vicariously and contributorily liable for that infringement as a matter of law. As the sole officer and owner of Ram Distribution, Boldin worked at the company on a daily basis and was responsible for the overall operation of the business. Therefore, he had the right and ability to supervise the acquisition and distribution of counterfeit Microsoft products. In addition, Boldin had an obvious and direct financial interest in profits resulting from infringing activity because he received payment from Ram Distribution and was entitled to all of its profits. Boldin's profits were directly related

to the success of the business – the more (infringing) product that was sold, the more profit Boldin received as the sole owner.

Further, Boldin received numerous warnings that purchases of software and components from the gray market would likely result in distribution of counterfeit Microsoft products. (PFOF ¶ ¶ 36, 42, 46). However, despite these warnings, Boldin continued his gray market purchasing and deemed it a "risk worth taking." (PFOF ¶ 47). Indeed, Boldin referred to such purchasing as "the business model." (PFOF ¶ 47). Thus, even if Boldin did not personally participate in the daily ordering and distribution of product, his implementation of an infringing behavior (if a factfinder determines that infringement occurred) as a business policy evidences that Boldin "induce[d], cause[d], and materially contribute[d] to the infringing conduct of another." *Burdick*, 988 F.Supp. at 1209.

The same facts and actions lead the court to conclude that, if defendants committed infringement, that infringement was "willful." Defendants received multiple warnings that their actions would likely result in infringement, including a letter, an email, and a personal visit by a Microsoft investigator. (PFOF, ¶¶ 36, 42, 46). In addition, Microsoft previously sued Boldin for copyright infringement, trademark infringement and false designation of origin.[1] (PFOF ¶ 32). As a result, the court entered a Consent Permanent Injunction prohibiting Boldin from making infringing distributions of software programs, components, items protected by

---

[1] In 2000, Microsoft filed an action against Boldin's previous company, The Small Business Alliance Association, Case No. 00-C-0324, in the United States District Court for the Eastern District of Wisconsin.

-14-

Microsoft's trademark, and from further activity constituting infringement of Microsoft's intellectual property. (PFOF ¶¶ 33-34). Boldin was subject to an injunction resulting from claims filed by the same plaintiff, Microsoft, and based on the same business activities. Therefore, he was well aware of the dangers posed by continued purchasing in the gray market. Boldin's decision to purchase from non-Microsoft authorized vendors, despite repeated warnings and an injunction, gives rise to an inference of willful conduct by defendants. This inference is sufficient to establish "willful infringement" under the Copyright Act. *Island Software & Computer Serv. 413 F.3d* at 264.

    **b.    Liability for Trademark Infringement**

An individual may also incur liability for trademark infringement under the theories of vicarious and contributory liability. *See Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992). The requirements for establishing vicarious liability for trademark infringement are similar to those used for copyright infringement. An individual is vicariously liable for trademark infringement when that individual had: 1) the right and ability to supervise the activity; and 2) an obvious and direct financial interest in the exploitation of materials. *See Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 U.S. Dist. LEXIS 479, at *33-34 (N.D. Ill. Jan. 19, 2001); *Microsoft Corp. v. V3 Solutions, Inc.*, No. 01 C 4693, 2003 U.S. Dist. LEXIS 15008, at *38-41 (N.D. Ill. Aug. 27, 2003).

To be liable for contributory trademark infringement, an individual corporate officer must be a "moving, active conscious force behind infringement." *Monsanto Co. v. Haskel Trading, Inc.*, 13 F.Supp.2d 349, 354 (E.D.N.Y. 1998); *See also Dynamic Force, LLC v. Dynamic Force, Ltd.*, 98 C 5922, 1999 WL 342407, at *4 (N.D. Ill. May 14, 1999) ("...a corporate officer will be held personally liable for trademark infringement and unfair competition if the officer is a moving, active force behind the corporation's infringement."). To prove contributory infringement, a plaintiff must demonstrate that a defendant: 1) intentionally induced a third party to infringe the plaintiff's mark; or 2) supplied a product to a third party with actual or constructive knowledge that the product was being used to directly infringe the mark. *Vulcan Golf, LLC v. Google Inc.*, 552 F.Supp.2d 752, 778 (N.D. Ill. 2008).

A defendant commits willful trademark infringement when the defendant acted with "willful blindness" to the trademark holder's rights. *Hard Rock Café*, 955 F.2d at 1149. To constitute "willful blindness," a defendant must suspect wrongdoing and deliberately fail to investigate. *Id*. Simple failure to take precautions against counterfeiting is insufficient. *Id*. However, "evidence that notice has been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness..." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) (quoting *Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991)).

The court concludes that, if a factfinder ultimately determines that defendants committed trademark infringement, then Boldin is vicariously and contributorily liable for that infringement as a matter of law. The court further finds that the defendants' actions, if found to constitute trademark infringement, constitute willful infringement. As discussed above, Boldin had the right and ability to supervise the infringing activity and he possessed a direct and obvious financial interest in exploiting infringing materials. Boldin was the sole officer and shareholder of the business and he was entitled to the company's profits. Thus, the more counterfeit software Ram Distribution sold (if it did sell counterfeits), the more profit Boldin received. In addition, as previously discussed, Boldin considered the purchase of potentially counterfeit product in the gray market to be a worthwhile business risk. As the President, Secretary and owner, Boldin was the "moving force" behind the business decision to purchase in a market he constructively knew would lead the company to make infringing distributions. Finally, Boldin disregarded the warnings he received from both the court's injunction and Microsoft regarding gray market purchases and the likelihood of resulting infringement. Therefore, Boldin is vicariously and contributorily liable for trademark infringement and his actions constitute "willful blindness."

### c. Damages, Fees and a Permanent Injunction

Microsoft further requests that this court impose statutory damages, attorneys' fees and costs, and a permanent injunction against defendants. However, as

discussed above, the court will deny Microsoft's motion for summary judgment on the issues of infringement, false designation of origin, and unfair competition. Therefore, such an award would be inappropriate. The court will address these issues if and when a factfinder determines that defendants committed the infringing actions alleged.

Accordingly,

**IT IS ORDERED** that Microsoft's motion for summary judgment (Docket #36) be and the same is hereby **GRANTED in part** and **DENIED in part**; Microsoft's motion for summary judgment on the issues of copyright infringement, trademark infringement, false designation of origin and unfair competition are **denied**; Microsoft's motion for summary judgment on the issues of Boldin's personal liability and willful infringement under the Copyright Act and the Lanham Act are **granted**; Microsoft's motion for summary judgment on the issues of statutory damages, attorneys' fees and costs, and a permanent injunction are **denied**.

Dated at Milwaukee, Wisconsin, this 16th day of December, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge